LEECH LAKE BAND OF CHIPPEWA
INDIANS et al., Plaintiffs,

v.

Robert L. HERBST, Commissioner of
Natural Resources of the State
of Minnesota, Defendant.

UNITED STATES of America,
Plaintiff,

v.

STATE OF MINNESOTA, Defendant.

Nos. 3–69 Civ–65, 3–70 Civ–228.

United States District Court,
D. Minnesota,
Third Division.

Dec. 10, 1971.

Bernard P. Becker, Minneapolis, Minn., Kent P. Tupper, Walker, Minn., for plaintiff, Leech Lake Band of Chippewa Indians, et al.

Robert G. Renner, U. S. Atty., Minneapolis, Minn., for plaintiff, United States of America.

Warren Spannaus, Atty. Gen., Morris M. Sherman, and Eldon G. Kaul, Sp. Asst. Attys. Gen., St. Paul, Minn., for defendant, State of Minnesota.

## MEMORANDUM AND ORDER

DEVITT, Chief Judge.

The basic issue in these two jointly tried Declaratory Judgment actions is whether plaintiff, Chippewa Indians, may fish, hunt and harvest wild rice on the public lands and waters of the Leech Lake Indian Reservation without complying with Minnesota game and fish laws.

Plaintiffs base their claim that the Indians are not amenable to such Minnesota laws on three arguments. First, plaintiffs allege that the Indians possessed aboriginal rights to fish and hunt on the land in question. Second, plaintiffs claim that these rights were recognized in treaties with the white man; and finally, it is plaintiffs' position that the United States, vested with the sole authority to do so, has never abrogated these treaty rights.

The defendant, State of Minnesota, claims that any right to unrestricted fishing and hunting the Leech Lake Indians may have had was terminated in 1889 by the United States Congress when it enacted the Nelson Act (25 Stat. 642) which provided for "a complete extinguishment of the Indian title" to the lands of the Leech Lake Reservation. Accordingly, it is the position of the State that the game and fish laws must be enforced against Indians and non-Indians alike.

Jurisdiction is established. 28 U.S.C. § 1331(a) and § 1362. The matter was tried to the Court on November 2 and 3, 1971. Nineteen witnesses testified and many exhibits were received. Extensive written briefs were filed and oral argument held.

The Leech Lake Indian Reservation in north-central Minnesota consists of 588,684 acres of land occupying portions of Itasca, Cass and Beltrami counties.[1] The reservation was created by treaty in 1855 (10 Stat. 1165, 11 Kappler, p. 685; Defendant's Exhibit B), and continued under modifying provisions of subsequent treaties and executives orders. Eighty percent of the land in the reservation is now owned by county, state and federal governments with the Chip-

---

1. The treaty description of the Leech Lake Reservation is: Beginning at the mouth of Little Boy River; thence up said river through the first lake to the southern extremity of the second lake on said river; thence in a direct line to the most southern point of Leech Lake, and thence through said lake, so as to include all the islands therein, to the place of beginning.

Also, commencing at a point on the Mississippi River, opposite the mouth of the Wanoman River, as laid down on Sewall's map of Minnesota; thence due north to a point two miles further north than the most northerly point of Lake Winnibigoshish; thence due west to the range line between ranges 25 and 26 west; thence north on said range line to the twelfth standard parallel; thence west on said standard parallel to range line between ranges 28 and 29; thence south on said range line till it intersects the third river; thence down said river to a point two miles further north than the most northerly point of Lake Winnibigoshish; thence due west to a point two miles west of the most westerly point of Cass Lake; thence due south to Kabedona River; thence down said river to Leech Lake; thence along the north shore of Leech Lake to its outlet in Leech Lake River; thence down the main channel of said river to its junction with the Mississippi River, and thence down the Mississippi to the place of beginning.

Also, commencing at a point on the present eastern boundary of said Leech Lake Indian Reserve, where the section line between sections 11 and 14, and 10 and 15, of township 55 north, range 27 west of the fourth principal meridian, if extended west would intersect the same; thence east on said extended section line to section corner between sections 11, 12, 13 and 14; thence north on the section line between sections 11 and 12, and 1 and 2, all of the same township and range above mentioned, to the township line between townships 55 and 56 north; thence continuing north to a point 2 miles north of said township line; thence west to present eastern boundary of said Leech Lake Reserve; thence south on said boundary line, and with the same, to the place of beginning.

Also, all land embraced in township 143 north, range 29 west, in the State of Minnesota.

pewa National Forest occupying the largest portion of the area. The land, generally swampy and unsuitable for agriculture, includes many lakes including Cass, Leech and Winnibigoshish and is a popular tourist area. Some of the best walleye fishing in Minnesota is to be found on the lakes of the reservation. According to the 1970 census, 2,795 members of the Leech Lake Band live within or adjacent to the reservation. Many of these Indians hunt and fish for their sustenance.

The Leech Lake Reservation is one of seven Chippewa reservations in the state. Although only the rights of the Leech Lake Band of Chippewa are at issue, counsel represent that a decision here will affect the rights of the Chippewa tribe on White Earth, Nett Lake, Fond du Lac, Mille Lacs and the Grand Portage Reservations.

The State does not seriously dispute plaintiffs' claim that the Leech Lake Indians once possessed the claimed fishing and hunting rights. Indeed the Minnesota Supreme Court in State v. Jackson, 218 Minn. 429, 16 N.W.2d 752 (1944), recognized this. But the State takes the position that such rights were terminated by Congress with the enactment of the Nelson Act in 1889. It is agreed that the Congress has the plenary power to so curtail treaty rights with Indians. Lone Wolf v. Hitchcock, 187 U.S. 553, 23 S.Ct. 216, 47 L.Ed. 299 (1903).

Minnesota points to the specific language of the Nelson Act which, in its view, terminated any fishing, hunting and ricing treaty rights of the Indians and disestablished the Leech Lake Reservation:

"* * * [T]he acceptance and approval of such session and relinquishment by the President of the United States shall be deemed full and ample proof of the ascent of the Indians and *shall operate as a complete extinguishment of the Indian title* without any other or further act or ceremony whatsoever for the purposes and upon the terms in this act provided." (Emphasis supplied by defendant.) Defendant's Exhibit F.

Defendant calls attention to the written agreement between the United States and the Chippewa which provided:

"[We] do hereby grant, cede and relinquish and convey to the United States, for the purposes and upon the terms stated in said (Nelson) Act, *all our right, title and interest* in and to the lands reserved and set apart * * *." (Emphasis supplied by defendant.) H.R. Document 247 50th Congress, First Session (1889) Defendant's Exhibit GGG, page 49.

The State argues that this language is plain on its face and that what was being ceded by the Indians under authority of the Nelson Act was *all* Indian rights in the Leech Lake (and other Chippewa) lands including fishing and hunting rights.

The issue with which we are dealing has been a knotty and vexatious one for years.[2] The Indians persistently have claimed that their inherent right to fish and hunt on the Leech Lake Reservation is protected by treaty. Several Chippewa testified, in their native Ojibwa tongue through interpreters, of the understanding of their elders, and they in turn of their elders, that always in their dealings with the white man it was understood that they were to have unrestricted hunting and fishing rights on the Leech Lake Reservation. Just as persistently, Minnesota has sought to enforce its game and fish laws on all but the Indian allotted and trust lands on the Leech Lake Reservation; this exception made by virtue of the decision of the Minnesota Supreme Court in State

---

2. President Harrison was advised by the Interior Department on January 30, 1890 that "The rights of the Indian upon this reservation have been a vexed question, full of difficulties and embarrassments * * *." Defendant's Exhibit GGG, P.S.

v. Jackson, supra. Several Indians testified to their very recent game and fish violation arrests by Minnesota game wardens.

An examination of numerous letters and opinions of officials of the Interior Department and of its Bureau of Indian Affairs (Defendant's Exhibits H through DDD), reflects that it was a long held view of these officials that the Nelson Act terminated fishing and hunting rights of these Indians and that Minnesota properly could enforce its laws on all but Indian allotted and trust land on the reservation. But that is no longer the view of the United States. The United States, here as a plaintiff through its United States Attorney, urges a finding that the disputed rights are still vested in the Chippewa.

Defendant thus is forced into the anomalous position of attempting to show that the views of the two contracting parties, as these views are reflected in treaty, executive orders, laws and actual practice, are contrary to the position now urged by these contracting parties.

We start with the undisputed premise that at the time of the passage of the Nelson Act in 1889, the Indians possessed unrestricted hunting and fishing rights on the reservation. These rights, while perhaps in fact dating back many years to an aboriginal right were established in law by treaty with the United States in 1855, 1864 and 1867. (See Defendant's Exhibits B, C and D.)

█ The Nelson Act, although authorizing the United States to pass legal title to certain reservation lands to outsiders, said nothing about the Indian treaty rights to hunt and fish. The United States Supreme Court has counseled us that the abrogation of treaty rights is not to be lightly inferred. In

Pigeon River Improvement, Slide & Boom Co. v. Charles W. Cox, Ltd., 291 U.S. 138, 54 S.Ct. 361, 367, 78 L.Ed. 695 (1934), the Court said, "* * * the intention to abrogate or modify a treaty is not to be lightly imputed to the Congress * * *."

The defendant argues that the Nelson Act disestablished the Leech Lake Reservation and that this disestablishment and subsequent passage of legal title to the land had the necessary effect of terminating the hunting and fishing rights.

The Nelson Act was one of a series of acts passed by the Congress starting in 1854, reflecting attempts "to civilize" the Indian and distribute part of his land to land hungry settlers for farming and lumbering.[3]

In the case of the Leech Lake Reservation the apparent objective of those urging enactment of the Nelson Act was to induce the Indian to take individual allotments of land on the White Earth Reservation where land suitable for farming was available to them and to sell the Leech Lake land to settlers and put the consideration paid in the U. S. Treasury in trust for the benefit of the tribe. When the Nelson Act was enacted, however, it provided that members of the tribe could alternatively accept allotments on their own Leech Lake Reservation. Less than one-fourth of the Indians actually moved to White Earth (Government's Exhibits 63, 64). The rest remained and many of them accepted allotments on the Leech Lake Reservation where they and their descendants continue to live.

█ It is apparent in light of events before and after the passage of the Nelson Act that its purpose was not to terminate the reservation or end federal responsibility for the Indian but rather to permit the sale of certain of

---

3. Included in this series of acts is the General Allotment Act of 1887. President Grover Cleveland is quoted as saying, after signing the General Allotment Act that "Hunger and thirst of the white man for Indian land is almost equal to his hunger and thirst after righteousness." Farb, Peter. Man's Rise to Civilization: As shown by the Indians of North America from primeval times to the coming of the industrial state. New York: Dutton 1968.

his lands to homesteaders and others. The United States Supreme Court has held that it is the termination of federal responsibility and not the passing of legal land title within an area which determines whether a reservation exists in the eyes of the law. Seymour v. Superintendent, 368 U.S. 351, 82 S.Ct. 424, 7 L.Ed.2d 346 (1962).

An analogous factual situation existed in the *Seymour* case. The Congressional act there involved provided for the sale of mineral lands and the settlement of surplus lands under the homestead laws. The funds obtained from the sale of these lands also were to be deposited in the United States Treasury in trust for the benefit of the tribe.

The Supreme Court found that there was no express language vacating the reservation and restoring the land to the public domain, thus the act did not terminate the reservation.

The Court said:

"The Act did no more than open the way for non-Indian settlers to own land on the reservation in a manner which the Federal Government, acting as guardian and trustee for the Indians, regarded as beneficial to the development of its wards." 368 U.S. 356, 82 S.Ct. 427.

That the Nelson Act was not intended to terminate federal responsibility for the Indians is made manifest by continued government recognition from 1889 to the present of its heavy duty as guardian of the Leech Lake Indians. The Congress enacted numerous laws, administered by the Bureau of Indian Affairs, which provide for almost complete cradle to grave support and supervision for the education, welfare, and well-being of the Leech Lake Indians. Several witnesses at trial told of the administration of these programs centered on the Reservation and designed almost exclusively for those Chippewa actually living there. Our circuit recently has recognized that the relationship of the federal government and the Indian has always been that of guardian and ward.

Kills Crow v. United States, 451 F.2d 323, 8th Cir. 1971.

That it was not the intention of Congress to terminate the Leech Lake Indian Reservation is apparent from the number of laws enacted by it subsequent to the Nelson Act dealing directly with the Leech Lake Reservation as such. The United States Attorney has cited and summarized 33 such laws in an appendix to his brief.

If it was the intention of Congress to disestablish the Leech Lake Reservation, the Congress knew how to say so in clear language. If so minded, it would most likely have used terminology such as it did in the case of the Colville Reservation in Washington when it provided that the pertinent part of the area was "vacated and restored to the public domain." 27 Stat. 62 (Act of July 1, 1892, C. 140). It spoke with the necessary clarity also in the case of the Menominee Indians of Wisconsin. There the Congress effected its intention to terminate the reservation by express language, 25 U.S.C. § 891–902.

Despite this unequivocal language in Menominee Tribe of Indians v. United States, 391 U.S. 404, 88 S.Ct. 1705, 20 L.Ed.2d 697 (1968), the United States Supreme Court held that while the language was effective to terminate the reservation, it still did not abrogate Indian fishing and hunting rights. It said:

"We decline to construe the Termination Act as a backhanded way of abrogating the hunting and fishing rights of those Indians. * * * 'The intention to abrogate or modify a treaty is not to be lightly imputed to the Congress.'" 391 U.S. 413, 88 S.Ct. 1711.

In the instant case any doubt as to the intention of Congress was clarified by the enactment of Public Law 280 in 1953 (18 U.S.C. § 1162, 28 U.S.C. § 1360). This statute, while assigning the States certain civil and criminal jurisdiction over Indian affairs, specifically withheld from the State jurisdiction over treaty hunting and fishing rights.

The Congress provided that the transfer of certain jurisdiction to the States should not " * * * deprive any Indian or any Indian tribe, band, or community of any right, privilege, or immunity afforded under Federal treaty, agreement, or statute with respect to hunting, trapping or fishing or the control, licensing, or regulation thereof." 18 U.S.C. § 1162(b).

The Leech Lake Band suggests that it has the exclusive right to regulate hunting and fishing of Indian and non-Indian alike on the reservation the same as the Minnesota Red Lake Indians do and cites Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959), and Littell v. Nakai, 344 F.2d 486 (9th Cir. 1965), as authority for the position.

 But the Red Lake Indians of Minnesota and the Navajo Indians of Arizona, whose rights were determined in *Williams* and *Littell*, are governed by different treaties, have enjoyed different relationships to the government, and have been the subject of different expressions of Congressional policy. The Red Lake and Navajo Indians live on "closed" reservations. The Leech Lake Chippewa live on an "open" reservation. Here I am not persuaded that, as in *Williams* and *Littell*, the conclusion is compelled that the Leech Lake Band possesses the exclusive authority to regulate fishing, hunting and ricing.

I am satisfied that the Leech Lake Indians held aboriginal fishing and hunting rights, that these rights were preserved by treaty with the United States and that the Nelson Act did not abrogate these rights. Further, I am convinced that the long time guardian-ward relationship between the United States and the Indian continues to exist as to the Leech Lake Indians, and that the existence of this continuing relationship negatives any inference that the Leech Lake Reservation, and with it the asserted rights, was terminated. Congress has expressed its will that the treaty rights exist and will be respected.

This conclusion is reached on the basis of the Stipulation of the parties, the facts adduced at trial, the treaties and laws of the United States and pertinent court decisions, particularly *Jackson*, *Seymour* and *Menominee Tribe*, supra.

The Court declares that Plaintiff Indians have the right to hunt and fish and gather wild rice on public lands and public waters of the Leech Lake Reservation free of Minnesota game and fish laws. Defendants are enjoined from enforcing such laws.