517 F.2d 532
 Patricia A. ALLEN, Individually and on behalf of all other
persons similarly situated, Appellant,
v.
Vera J. LIKINS, Commissioner, Minnesota Department of Public
Welfare, et al., Appellees.
 No. 74-1806.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 14, 1975.
Decided June 9, 1975.
 
 James P. Cullen, Minneapolis, Minn., for appellant.
 Michael R. Saeger, Sp. Asst. Atty. Gen., St. Paul, Minn., for appellees.
 Before VAN OOSTERHOUT and JONES,* Senior Circuit Judges, and HENLEY, Circuit Judge.
 HENLEY, Circuit Judge.
 
 
 1
 The plaintiff, a former inmate of the Minnesota Correctional Institute for Women, seeks to maintain a class action challenging the constitutionality of a Minnesota statute under which her children were found to be "dependent" on the State of Minnesota and thus subject to the custody of the Blue Earth County Welfare Board.[1] Plaintiff asserts that a finding of dependency within the meaning of the statute constitutes a deprivation of a parent's Ninth and Fourteenth Amendment rights when that determination is based solely on the fact of the parent's incarceration and when less stringent alternatives are available to the State. The issue presented on appeal is whether a "case" or "controversy" still exists within the meaning of Art. III, § 2, of the Constitution, and of the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. For the reasons set forth below, we affirm the district court's order of September 30, 1974 dismissing this action as moot.
 
 
 2
 In 1970 plaintiff was convicted of aggravated assault and placed on probation for five years. Her probation was revoked on July 28, 1973 and she was incarcerated at the Minnesota Correctional Institute for Women on August 2, 1973. Pursuant to Minn.Stat.Ann. § 260.191 subd. 1 (1974), the Blue Earth County Juvenile Court subsequently granted the county welfare board's petition for legal custody of plaintiff's three minor children. Plaintiff failed to exhaust her state appellate remedies and instead on November 13, 1973 filed this class action in the district court seeking to regain custody of her children and to have the challenged statute declared unconstitutional as applied. Plaintiff purported to represent "all incarcerated parents subject to defendants' jurisdiction who are or were incarcerated in a penal or correctional institution at the time legal proceedings are or were instituted to judicially terminate their right to participate in the care, custody, management, nurture, and control of their children solely by reason of their status as an incarcerated parent." The defendants are individual state and county welfare officials.
 
 
 3
 On February 7, 1974 plaintiff filed a motion for a preliminary injunction and a motion for class action certification pursuant to Fed.R.Civ.P. 23(c). Arguments were heard on March 4, 1974, but the district court never ruled on either motion. Plaintiff was paroled from prison and shortly thereafter, on April 3, 1974, regained custody of her children. She subsequently dropped her request for injunctive relief and instead sought only a declaratory judgment that the challenged statute and all proceedings thereunder were in violation of the Ninth and Fourteenth Amendments when applied to incarcerated parents solely by reason of their incarceration. On September 30, 1974 the district court granted defendants' motion to dismiss the entire action as moot. In an unpublished memorandum opinion, Judge Devitt[2] reasoned that plaintiff's parole from prison and regaining of custody of her children rendered her claims moot and thus divested the court of subject matter jurisdiction under Art. III, § 2, of the United States Constitution and under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.
 
 
 4
 It is axiomatic that a "case" or "controversy" must exist at all stages of the litigation and not merely at the time the complaint is filed. Golden v. Zwickler, 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969). Whether a "controversy" exists within the meaning of the Declaratory Judgment Act depends on
 
 
 5
 . . . whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment.
 
 
 6
 Likewise, the federal courts' impotence to review moot cases derives from the Art. III requirement that judicial power shall extend only to "cases" and "controversies." North Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971). To be cognizable in a federal court, any action
 
 
 7
 . . . must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.
 
 
 8
 Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937).
 
 
 9
 Indeed, the "controversy" requirement of the Declaratory Judgment Act and Art. III appear to be synonymous. Super Tire Engineering Co. v. McCorkle, 416 U.S. 115, 122, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974); Steffel v. Thompson, 415 U.S. 452, 458-60, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974).
 
 
 10
 On appeal, plaintiff argues that the threat of again losing custody of her children is of "sufficient immediacy and reality" to warrant a finding that a live issue still exists between the parties on her request for a declaratory judgment. We conclude, however, that the district court correctly found that any threat of a future loss of custody is a remote and speculative possibility. Here, four contingencies must occur before plaintiff will lose custody of her children. First, she must violate the conditions of her parole; second, her parole must be revoked; third, the welfare board must initiate dependency proceedings; and, fourth, the county juvenile court must make a finding of dependency. Three of these contingencies involve the exercise of governmental discretion, and one is under the exclusive control of plaintiff. In the circumstances, we cannot say that the threat of again losing custody of her children is a real and immediate danger.
 
 
 11
 Nevertheless, plaintiff argues that her case is to be excepted from the mootness doctrine. She claims that the "collateral consequences" flowing from the past judicial finding of dependency constitutes a substantial injury which serves to keep this case alive. Carafas v. LaVallee, 391 U.S. 234, 237-38, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968). These collateral consequences are said to be: (1) that the past record of dependency may be used in future dependency proceedings against plaintiff; and (2) that plaintiff and her children are undergoing emotional and psychological stresses as a result of their past separation. Whether the issuance of a declaratory judgment would alleviate any psychological problems of plaintiff and her children presents an obvious case of speculation which cannot be used to meet the "case" or "controversy" requirement of either Art. III or the Declaratory Judgment Act. And, of course, three of the same contingencies plaintiff's violating her parole, revocation of parole and initiation of dependency proceedings must occur before the past record of dependency could be used against plaintiff in another proceeding.
 
 
 12
 While mere voluntary cessation of allegedly illegal conduct does not moot a case, United States v. W. T. Grant Co., 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953), we believe this rule to be inapplicable here. The defendants cannot resume their allegedly illegal conduct until plaintiff voluntarily commits an act justifying her parole revocation. Unlike Grant, resumption of the challenged conduct does not depend solely on the defendants' capricious actions by which they are "free to return to (their) old ways." Id. at 632, 73 S.Ct. at 897.
 
 
 13
 We recognize that a class action may continue to be a "case" or "controversy" under Art. III and the Declaratory Judgment Act if the claim of the named plaintiff becomes moot after class action certification. Sosna v. Iowa, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). Here, of course, the named plaintiff's claim became moot before the district court had certified the case as a class action pursuant to Fed.R.Civ.P. 23(c). Thus, the dismissal of the entire action must be affirmed unless the district court failed to rule on plaintiff's motion for class action certification "as soon as practicable after commencement of the action" as is required by Rule 23(c).
 
 
 14
 As stated, plaintiff filed her separate motion for class action certification on February 7, 1974. The district court heard the motion on March 4, 1974, but before the court issued a ruling the plaintiff regained custody of her children on April 3, 1974. Since plaintiff's individual case became moot on April 3 her attorney cannot claim any prejudice to the purported class due to the district court's failure to rule after that date. In the circumstances, we do not find that the court failed to rule on plaintiff's motion "as soon as practicable," and so dismissal of the entire action was proper. Commissioners of the City of Indianapolis v. Jacobs, 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975).
 
 
 15
 Were we to hold that the district court abused its discretion in failing to certify the case as a class action before April 3, 1974, the case still would be moot since the issues involved here are not "capable of repetition, yet evading review." Sosna, supra, 419 U.S. at 401, 95 S.Ct. at 558; Jacobs, supra, 420 U.S. at 129, 95 S.Ct. at 850.
 
 
 16
 Affirmed.
 
 
 
 *
 Warren L. Jones, United States Court of Appeals for the Fifth Circuit, sitting by designation
 
 
 [1]
 Minn.Stat.Ann. § 260.015 subd. 6(a) (1974) provides in part:
 "Dependent child" means a child:
 (a) Who is without a parent, guardian, or other custodian . . . .
 Minn.Stat.Ann. § 260.191 subd. 1 (1974) provides in part:
 If the court finds that the child is neglected or dependent, it shall enter an order making any of the following dispositions of the case:
 (a) Place the child under the protective supervision of the county welfare board or child placing agency in his own home under conditions prescribed by the court directed to the correction of the neglect or dependency of the child;
 (b) Transfer legal custody to one of the following:
 (1) a child placing agency;
 (2) the county welfare board . . . .
 
 
 [2]
 The Honorable Edward J. Devitt, Chief Judge, United States District Court for the District of Minnesota