570 F.2d 737
 CASS COUNTY and Hubbard County, Minnesota under a joint
Powers Resolution, Appellants,
v.
UNITED STATES of America, Thomas E. Kleppe, Secretary of the
Interior, State of Minnesota, Wendell Anderson, Governor,
County of Itasca, Minnesota, County of Beltrami, Minnesota,
Minnesota Chippewa Tribe, Inc., Leech Lake Band of Chippewa
Indians, Appellees.
 No. 77-1523.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 14, 1977.
Decided Feb. 14, 1978.
 
 John H. Martin, St. Paul, Minn., for appellants.
 Gerald Seck, Tupper, Smith & Seck, Ltd., Walker, Minn., argued, Kent P. Tupper, Walker, Minn., on brief, for appellee.
 Edward J. Shawaker, Atty., Dept. of Justice, Washington, D. C., Edmund B. Clark, Atty. and James W. Moorman, Acting Asst. Atty. Gen., Dept. of Justice, Washington, D. C., and Andrew W. Danielson, U. S. Atty., Minneapolis, Minn., on brief, for Federal appellees.
 Steve G. Thorne, Sp. Asst. Atty. Gen., St. Paul, Minn., Warren Spannaus, Atty. Gen., and C. Paul Faraci, Deputy Atty. Gen., St. Paul, Minn., on brief, for appellee, State of Minnesota.
 Before ROSS, STEPHENSON and WEBSTER, Circuit Judges.
 WEBSTER, Circuit Judge.
 
 
 1
 Appellants, political subdivisions of the State of Minnesota, brought an action against the United States and the Secretary of the Interior, the State of Minnesota, Itasca and Beltrami Counties, the Minnesota Chippewa Tribe, and the Leech Lake Band of Chippewa Indians under the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., seeking a declaration as to the relative governmental rights of the respective parties over territory known as the "Leech Lake Reservation." The District Court[1] dismissed the action "because the complaint does not allege any facts that indicate existence of a controversy sufficiently ripe to be the basis of a decision."[2] We affirm.
 
 
 2
 The complaint filed by the appellant counties in the action below alleges that government in this territory has become confused because conflicting claims of jurisdiction are asserted over the land. Although certain examples are set forth that suggest the type of problem involved, these are all pleaded in very general terms without specificity as to time, place, or persons involved.[3] The prayer for relief asks
 
 
 3
 (f)or a judgment declaring and adjudicating the respective rights and duties of plaintiff and defendant to the lands and waters of the territory designated as "Leech Lake Reservation", and further declaring that plaintiff's (sic) have the sole and exclusive governmental authority over such territory in conjunction with the State of Minnesota and the United States, and further declaring that the Leech Lake Band of Chippewa Indians as the Minnesota Chippewa Tribe, Inc. have no authority of self-government or judicial rights of enforcement for laws or regulations of Indians within the "Leech Lake Reservation".
 
 
 4
 In response to the complaint, the various defendants filed motions to dismiss the action which were granted by the District Court. Similarly, a motion of the appellant counties to reconsider the order or for leave to amend the complaint was denied. Appellants appeal from these orders.
 
 
 5
 The basis of the District Court's decision, and the issue before this Court, is whether a "controversy" within the meaning of the Declaratory Judgment Act and Article III of the Constitution exists on the basis of the complaint as written. "The courts of the United States do not sit to decide questions of law presented in a vacuum but only such questions as arise in a 'case or controversy.' " C. Wright, Law of Federal Courts § 12 at 38 (3d Ed. 1976). The statutory standard for determining whether or not a controversy exists is the same as that under the Constitution. Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 239-40, 57 S.Ct. 461, 81 L.Ed. 617 (1937); Allen v. Likins, 517 F.2d 532, 534 (8th Cir. 1975); Sherwood Medical Industries, Inc. v. Deknatel, Inc., 512 F.2d 724, 726 (8th Cir. 1975).
 
 
 6
 The decisions of the Supreme Court have developed a definition of "controversy" that must be applied to the facts of this appeal. In Aetna Life Insurance Co. v. Haworth, supra, 300 U.S. at 240-41, 57 S.Ct. at 464, the Court said,
 
 
 7
 A "controversy" in this sense must be one that is appropriate for judicial determination. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. (citations omitted)
 
 
 8
 The difficulty in applying this definition was noted in Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).
 
 
 9
 The difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.
 
 
 10
 These two formulations have been cited and followed in this Circuit. See Allen v. Likins, supra, 517 F.2d at 534; Sherwood Medical Industries, Inc. v. Deknatel, Inc., supra, 512 F.2d at 727; St. Louis, Missouri, Paper Carriers Union No. 450 v. Pulitzer Publishing Co., 309 F.2d 716, 718 (8th Cir. 1962).
 
 
 11
 Similarly it is often expressed that federal courts will not render advisory opinions even in actions seeking declaratory judgments.
 
 
 12
 (T)he federal courts established pursuant to Article III of the Constitution do not render advisory opinions. For adjudication of constitutional issues, "concrete legal issues, presented in actual cases, not abstractions," are requisite. This is as true of declaratory judgments as any other field.
 
 
 13
 Golden v. Zwickler, 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969) (brackets in original), citing United Public Workers v. Mitchell, 330 U.S. 75, 89, 67 S.Ct. 556, 91 L.Ed. 754 (1947). See Muskrat v. United States, 219 U.S. 346, 362, 31 S.Ct. 250, 55 L.Ed. 246 (1911).
 
 
 14
 In order to present a "controversy," a question must not be abstract but must define an issue which is concrete and specific. In United States v. Fruehauf, 365 U.S. 146, 81 S.Ct. 547, 5 L.Ed.2d 476 (1961), the issue was whether a loan to a union official by a corporation violated the prohibitions of § 302 of the Labor Management Relations Act. The Court noted that the question on appeal appeared to have become whether any loan comes within the prohibitions of the statute. 365 U.S. at 157, 81 S.Ct. 547. In that posture the Court felt that a decision could not be rendered.
 
 
 15
 We do not reach that question on this appeal. For we cannot but regard it abstracted as it has become, in the course of these proceedings, from the immediate considerations which should determine the disposition of appellees' motions to dismiss an indictment incontestably valid on its face as other than a request for an advisory opinion. Such opinions, such advance expressions of legal judgment upon issues which remain unfocused because they are not pressed before the Court with that clear concreteness provided when a question emerges precisely framed and necessary for decision from a clash of adversary argument exploring every aspect of a multi-faced situation embracing conflicting and demanding interests, we have consistently refused to give.
 
 
 16
 Id. at 157, 81 S.Ct. at 554. See Flast v. Cohen, 392 U.S. 83, 96-97, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).
 
 
 17
 One reason for avoiding cases that are premature and not yet sufficiently focused is the unwillingness to render a decision whose ramifications in other fact situations are unclear. In Public Service Commission v. Wycoff Co., 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952), the respondent Wycoff Company sought a declaratory judgment that certain activity was interstate commerce and therefore not subject to regulation by a state agency. The Court concluded that the issue as presented was so abstract as not to be the proper basis of a decision.
 
 
 18
 (T)he propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power. While the courts should not be reluctant or niggardly in granting this relief in the cases for which it was designed, they must be alert to avoid imposition upon their jurisdiction through obtaining futile or premature interventions, especialy (sic) in the field of public law. A maximum of caution is necessary in the type of litigation that we have here, where a ruling is sought that would reach far beyond the particular case. Such differences of opinion or conflicts of interest must be "ripe for determination" as controversies over legal rights. The disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them.
 
 
 19
 344 U.S. at 243-44, 73 S.Ct. at 240. The Court was unwilling to require a decision that would necessarily determine every possible question that might arise in later cases. See id. at 243-46, 73 S.Ct. 236. Courts should be reluctant to decide cases that require them to speculate on the basis of hypothetical facts. United Public Workers v. Mitchell, supra, 330 U.S. at 90, 67 S.Ct. 556.
 
 
 20
 (T)he refusal to give advisory opinions must be based on "the implicit policies embodied in Article III, and not history alone." It recognizes the risk that comes from passing on abstract questions rather than limiting decisions to concrete cases in which a question is precisely framed by a clash of genuine adversary argument exploring every aspect of the issue.
 
 
 21
 C. Wright, Law of Federal Courts § 12 at 41 (3d Ed. 1976) (footnotes omitted).
 
 
 22
 Applying these pronouncements to the case before us, we conclude that the District Court properly dismissed the complaint for failure to allege sufficiently the existence of a controversy proper for judicial determination. The question presented to the District Court is abstract and hypothetical. The declaratory relief sought by the appellant counties would amount to no more than an advisory opinion.
 
 
 23
 Attempted exercise of county authority over Indian land requires an examination of congressional statutes in light of the particular activity involved. See Bryan v. Itasca County, 426 U.S. 373, 377-79, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976); Santa Rosa Band of Indians v. Kings County, 532 F.2d 655, 659 (9th Cir. 1975), cert. denied, 429 U.S. 1038, 97 S.Ct. 731, 50 L.Ed.2d 748 (1977); City of New Town, North Dakota v. United States, 454 F.2d 121, 125 (8th Cir. 1972). The District Court correctly observed that "the overlapping jurisdictional claims of the parties might well result in different resolutions for differing situations," and acted properly in dismissing the complaint. Under such circumstances the District Court would not have abused its discretion in declining to grant declaratory relief even if a true case or controversy had been pleaded, in light of the general relief sought. See generally C. Wright & A. Miller, Federal Practice and Procedure § 2759 (1973).
 
 
 24
 Our decision does not preclude a declaratory judgment in a properly pleaded case. Such decisions have been rendered by this Court and other courts in fact situations that were more specifically drawn. See Bryan v. Itasca County, supra (involving authority to tax mobile home owned by an Indian); Santa Rosa Band of Indians v. Kings County, supra (involving enforcement of land use ordinances against land held in trust for Indians by the federal government); City of New Town, North Dakota v. United States, supra (involving criminal jurisdiction over reservation land);[4] Leech Lake Band of Chippewa Indians v. Herbst, 334 F.Supp. 1001 (D.Minn.1971), summarily aff'd, 486 F.2d 888 (8th Cir. 1973) (involving application of state hunting and fishing laws to Indians). The broad blueprint sought by appellants based on less than specific issues would be entirely inappropriate and would likely be counter-productive in resolving the complex interrelationships implicit in this case. The District Court properly rejected the invitation to produce a law review article. No case or controversy admitting of declaratory relief was pleaded.
 
 
 25
 Affirmed.
 
 
 
 [1]
 The Honorable Earl R. Larson, United States District Court for the District of Minnesota
 
 
 [2]
 At oral argument the appellants conceded that they were not challenging on appeal the order dismissing the State of Minnesota, an original defendant
 
 
 [3]
 The complaint alleges the following acts by defendants:
 
 
 [4]
 4 Notwithstanding the clear intent of the treaties with the Chippewa and the Act of the Congress of the United States, the Department of the Interior, The State of Minnesota, The Minnesota Chippewa Tribe, and the Leech Lake Band of Chippewa Indians continue to claim sovereign rights over vast territories of the plaintiffs, and the defendant State of Minnesota, Itasca and Beltram Counties. That said Indians have instigated numerous suits against the state and the counties. They have and are refusing to pay taxes on lands within the areas designated as "Leech Lake Reservation". The Indians have and are denying the authority of the County Sheriff and Police organizations. They have closed long existing roads and trails. They are refusing to abide by County Zoning laws, State and County Criminal Laws, County Building Codes, State and County Health and Safety regulations, State and County Poluution (sic) Control standards, State and County water regulations. That said Indians have and are establishing separate Judicial bodies, law enforcement officials, general governing bodies, and in general creating separation, confusion and anarchy on acres of the county and states located within the "Leech Lake Reservation."
 It alleges that these acts have had an adverse effect upon appellant counties:
 
 
 [4]
 8 That as a direct result of the controversy the Counties are unable to perform its statutory duties in the following respects
 a) Form a comprehensive governmental plan.
 b) Budget on the basis of an adequate prediction of tax income.
 c) Enforce State and County Criminal Laws equally without consideration of race or national heritage.
 d) Determine its governmental jurisdictional boundaries and territorial authority.
 e) Make adequate tax assessments.
 f) Control environmental protection uniformity within its territory.
 g) Form normal governmental planning over its territory and citizens.
 h) Determine its rate of tax assessment because of its inability to determine whether land is taxable or not.
 j) Determine qualified state welfare recipients.
 
 
 [4]
 Appellants argue that City of New Town, North Dakota v. United States, 454 F.2d 121 (8th Cir. 1972), supports their contention that the District Court erred in dismissing the complaint. In that case, an action was brought under the Declaratory Judgment Act to establish criminal jurisdiction over territory that was held to be part of a reservation. Justiciability was never considered as an issue in the case and the issue presented to the Court was much narrower than that pleaded here