STATE of South Dakota, Plaintiff
and Respondent,

v.

Noah James HERO and Larry Duane
Blue Thunder, Defendants and
Appellants.

No. 12073.

Supreme Court of South Dakota.

Aug. 8, 1979.

Judith A. Atkinson, Asst. Atty. Gen., Pierre, for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on the brief.

Mary Ellen Sloan, Anita Remerowski and Terry L. Pechota, Mission, for defendants and appellants.

WOLLMAN, Chief Justice (on reassignment).

Appellants are members of the Rosebud Sioux Indian Tribe. They were convicted of hunting deer in Mellette County in violation of SDCL 41–8–2.

The central issue in this appeal is whether the hunting and fishing rights reserved within the original boundaries of the Great Sioux Reservation established by the Treaty of 1868 have been extinguished in the areas sold and disposed of by the Act of 1910, Chapter 260, 36 Stat. 448. We conclude that they have and accordingly affirm the convictions.

The Act involved in this appeal has recently been interpreted by the Court of Appeals for the Eighth Circuit and the United States Supreme Court. See *Rosebud Sioux Tribe v. Kneip*, 521 F.2d 87 (8th Cir. 1975), and *Rosebud Sioux Tribe v. Kneip*, 430 U.S. 584, 97 S.Ct. 1361, 51 L.Ed.2d 660 (1977). The question addressed in those cases was whether the Rosebud Sioux Reservation had been diminished by Acts passed by Congress in 1904, 1907, and 1910. The Supreme Court noted that the determination of Congressional intent regarding a reservation may be made only through an examination of the Act itself, the surrounding circumstances, and the legislative history. *Mattz v. Arnett*, 412 U.S. 481, 93 S.Ct. 2245, 37 L.Ed.2d 92 (1973). In keeping with this rule the Supreme Court in *Rosebud Sioux Tribe v. Kneip*, supra, gave considerable weight to an agreement approved by three-fourths of the Rosebud Sioux Tribe's adult males in 1901. This agreement would have disestablished all of the Rosebud Reservation lying in Gregory County, surrendering to the United States all the Indians' "claim, right, title and interest in and to all that part of the Rosebud Indian Reservation." S. Doc. No. 31, 57th Cong., 1st Sess., 28 (1901). Both the Court of Appeals for the Eighth Circuit and the United States Supreme Court concluded that even though Congress did not approve the 1901 Agreement ratified by the tribe, its intent was to carry forth and enact the objectives of that agreement in the Acts of

April 23, 1904, 33 Stat. 254; March 2, 1907, 34 Stat. 1230; and May 30, 1910, 36 Stat. 448. *Rosebud Sioux Tribe v. Kneip*, 430 U.S. 584, 97 S.Ct. 1361, 51 L.Ed.2d 660 (1977); *Rosebud Sioux Tribe v. Kneip*, 521 F.2d 87 (8th Cir. 1975). We agree with that analysis. We consider the language quoted by the Supreme Court from the President's Rosebud Proclamation of May 13, 1904, 33 Stat. 2354, to be significant in the present case:

> Whereas by an agreement between the Sioux tribe of Indians on the Rosebud Reservation, in the State of South Dakota, on the one part, and James McLaughlin, a United States Indian Inspector, on the other part, amended and ratified by act of Congress . . . *the said Indian tribe ceded, conveyed, transferred, relinquished, and surrendered, forever, and absolutely, without any reservation whatsoever*, expressed or implied, unto the United States of America, *all their claim, title, and interest of every kind and character* in and to the unallotted lands embraced in the following described tract of country now in the State of South Dakota . . . .

430 U.S. at 602, 97 S.Ct. at 1371, 51 L.Ed.2d at 674 (emphasis supplied by the Court).

It is logical to conclude that the cession of "all . . . claim, title, and interest of every kind and character" would include any claim to hunting rights. As stated by the Court of Appeals:

> The language employed, "cede, surrender, grant and convey" leaves no doubt as to its meaning. There is a complete relinquishment of right, title, and claim. "It would be impossible," we have held of the words "ceded, conveyed, transferred, relinquished and surrendered," to select words operating more completely to *extinguish every vestige of Indian title*, and releasing the government more absolutely from every obligation, moral as well as legal.

521 F.2d at 94 (emphasis supplied and footnote omitted). In addition, during the debates in the Senate concerning the Act of 1910, South Dakota's Senator Crawford, when explaining why the Indians were willing to abandon part of their reservation and why the government was encouraging such acts, stated:

> They are not lands which in their possession bring any revenue whatever. They do not cultivate them. There is neither fish nor game upon them. The policy of the Government toward the Indians and toward these lands has changed in more recent years simply in this respect—that the lands be sold and the proceeds made into a trust fund, the principal forever held inviolate and the income from which is devoted to the Indians.

45 Cong.Rec. 1068 (1910).

Because Congress was attempting to carry forth the objectives of the 1901 Agreement in the Acts of 1904, 1907, and 1910, one of these being cession of all the tribe's "claim, title, and interest of every kind and character" in the ceded land to the federal government, we believe the conclusion logically follows that the tribe retains no special hunting and fishing rights upon land that is no longer reservation, absent some clear intention by Congress to reserve those rights to the Indians. The *Rosebud Sioux Tribe v. Kneip* case, 430 U.S. 584, 97 S.Ct. 1361, 51 L.Ed.2d 660, makes clear that the Acts of 1904, 1907, and 1910 diminished the reservation. As pointed out by the Supreme Court in that opinion, the intent of these three Acts was the same: disestablishment of the reservation on the tracts of land specifically named by each Act. When read in the context of the legislative history of the 1901 Agreement and the Acts of 1904 and 1907, the 1910 Act manifests the intent of Congress to transfer all rights in the land from the Indians to the federal government. Therefore, we conclude that the treaty hunting and fishing rights on land ceded by the 1910 Act have been extinguished.

In a situation analogous to the case at bar, the United States District Court for the District of Minnesota recently decided the issue whether certain land cessions resulted in the extinguishment of all the Indi-

ans' property rights in the ceded areas, particularly the right to hunt and fish. *United States v. State of Minn.*, 466 F.Supp. 1382 (D.Minn.1979). The plaintiff Indian tribe argued that these rights were guaranteed them in an 1863 treaty and were not specifically abrogated by subsequent land cessions in 1889 and 1904. The District Court, agreeing with the State of Minnesota, held that in 1889 and 1904 the Red Lake Indians relinquished all their rights in the ceded area, including hunting and fishing rights. Neither the 1889 Act nor the 1904 Act mentioned hunting or fishing rights, but the court found that since the Red Lake Reservation was diminished in 1889 and in 1904, and that each of the cession documents contains the same words of relinquishment, the cessions not only extinguished Indian title to the ceded areas, but also had the concomitant "effect of abrogating any aboriginal hunting, fishing, trapping, or wild ricing rights" on those lands. 466 F.Supp. at 1385. While pointing out that cession treaties must be interpreted as the Indians understood them and that doubtful expressions must be resolved in the Indians' favor, the court held that the Red Lake Band did not retain hunting and fishing rights in the areas ceded in 1889 and 1904. The court found that the treaties it examined generally stated whether hunting and fishing rights were being reserved in a ceded area, and that when those rights were reserved it was only for a limited duration, typically until the land was needed for white settlement. 466 F.Supp. at 1386. See also *Sac & Fox Tribe of Mississippi In Iowa v. Licklider*, 576 F.2d 145 (8th Cir. 1978).

Appellants cite *Antoine v. Washington*, 420 U.S. 194, 95 S.Ct. 944, 43 L.Ed.2d 129 (1975), in support of their contention that hunting and fishing rights are retained by members of a tribe even though they have no other claim to the diminished parts of their reservation. In *Antoine*, however, the agreement by which the tribe agreed to cede the reservation area specifically provided that "the right to hunt and fish in common with all other persons on lands not allotted to said Indians shall not be taken away or in anywise abridged." 420 U.S. at 196, 95 S.Ct. at 946, 43 L.Ed.2d at 133.[1] In the present case there was no such reservation of hunting and fishing rights; on the contrary, here there was extinguishment of all claims.

The remaining cases primarily relied upon by appellant all involved treaties construed against the background of Public Law 280, 67 Stat. 588, as amended, 18 U.S.C. 1162.[2] This statute specifically provides that:

> Nothing in this section . . . shall deprive any Indian or any Indian tribe, band, or community of any right, privilege, or immunity afforded under Federal treaty, agreement, or statute with respect to hunting, trapping, or fishing or the control, licensing, or regulation thereof.

Those states that have exercised the Public Law 280 option to assume jurisdiction over the Indians residing in their states have agreed to assume this jurisdiction subject to a specific restriction excluding state control of hunting and fishing rights. As noted in *Leech Lake Band of Chippewa Indians v. Herbst*, 334 F.Supp. 1001, 1005 (D.Minn. 1971),

> This statute [Public Law 280], while assigning the States certain civil and criminal jurisdiction over Indian affairs, specifically withheld from the State jurisdiction over treaty hunting and fishing rights.

Because South Dakota is not a Public Law 280 state, that statute has no bearing on the question in the case before us.

---

1. Somewhat similar language was contained in the treaties recently construed by the United States Supreme Court in *Washington v. Washington State Commercial Passenger Fishing Vessel Association*, —— U.S. ——, 99 S.Ct. 3055, 61 L.Ed.2d 823 (1979).

2. *Menominee Tribe of Indians v. United States*, 391 U.S. 404, 88 S.Ct. 1705, 20 L.Ed.2d 697 (1968); *Kimball v. Callahan*, 493 F.2d 564 (9th Cir. 1974); and *Leech Lake Band of Chippewa Indians v. Herbst*, 334 F.Supp. 1001 (D.Minn. 1971).

The judgments appealed from are affirmed.

All the Justices concur.