845 F.2d 1492
 46 Ed. Law Rep. 572, 25 Fed. R. Evid. Serv. 735
 Nancy STEELE, as parent and next friend of her three minor
children, Jennifer Robin Steele, Joanna Marie
Steele, and Julianna Steele, Appellees,
v.
VAN BUREN PUBLIC SCHOOL DISTRICT; Billy W. Mitchell,
Superintendent of the Van Buren Public School District;
Gene Neidecker, Ivorson Riggs, Dr. Mike Hurst, Robert
Daughtery, Jim Lockheart, Darral Sparkman, Otis Arnold & Ray
Nelson, Individually and in their official capacities as
members of the Van Buren Public School District Board of
Directors, Appellants.
 No. 87-1738.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 16, 1988.
Decided May 6, 1988.
 
 Ben Core, Fort Smith, Ark., for appellants.
 Gregory T. Karber, Fort Smith, Ark., Michelle Strause, Little Rock, Ark., for appellees.
 Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and EUGENE A. WRIGHT, Senior Circuit Judge.*
 EUGENE A. WRIGHT, Senior Circuit Judge.
 
 
 1
 Nancy Steele sued Van Buren school district under 42 U.S.C. Sec. 1983 as parent and next friend of her three daughters. She sought declaratory and injunctive relief, claiming that the district violated the establishment clause of the First Amendment by permitting teachers to conduct prayer and religious activities at mandatory school functions. The district court[1] declared that the district violated the First Amendment by "permitting prayer to take place," enjoined future prayer, and awarded attorney fees and costs. We affirm.
 
 BACKGROUND
 
 2
 In September 1985, Jennifer, Steele's oldest daughter, complained to her mother that Jones, the high school band teacher, had instituted a new "tradition" of leading the band in prayer at mandatory rehearsals and performances. The next day, Steele told Jones that she objected to this new tradition and that it violated the United States Constitution. Then at church, Jones told the district Superintendent, Mitchell, of Steele's objections.
 
 
 3
 Steele sent letters to members of the School Board urging the adoption of a policy prohibiting prayer in school. The Board did nothing until October, when Steele presented her policy proposal at a Board meeting. The Board allowed no discussion but resolved to study the legal issues.
 
 
 4
 While the Board made its studies, Jones continued to lead the band in prayer. In November he stopped voluntarily because Steele had caused such dissension among band members that the prayers were "counter-productive." The Board never took official action with respect to the band prayer. But Mitchell told Jones that the Board would support him if he chose to continue the prayers and individual Board members expressed their support of them to Jones and Steele.
 
 
 5
 Seven months after she first wrote to the Board, Steele sued. She alleged that her three daughters had been subjected to Bible reading and prayer at mandatory school functions. At trial she proved that Jennifer was subjected to those conducted by Jones. The allegations concerning Joanna and Julianna, Steele's younger daughters, were not developed at trial.
 
 
 6
 The court found "that the actions of ... [the] School District, in permitting prayer to take place, were unconstitutional and violated the [First Amendment] rights of the plaintiffs." Although Jones and the district Superintendent testified that the band prayers were permanently discontinued, the court concluded that the case was not moot. It entered a permanent injunction and awarded Steele $15,103.97 in fees and costs.
 
 
 7
 The district appeals. It does not contest that school-sponsored prayer violates the establishment clause. Rather, it argues that the case is moot. Alternatively, the district claims that it cannot be liable for Jones' conduct because no district policy authorized or endorsed the prayers. It contests also an evidentiary ruling and the amount of fees awarded.
 
 ANALYSIS
 I. Mootness
 
 8
 The district argues that Steele's claim is moot for two reasons: Jones stopped the prayers and Jennifer was graduated from high school. We reject both contentions.
 
 
 9
 "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome. Where one of the several issues presented becomes moot, the remaining live issues supply the constitutional requirement of a case or controversy." Powell v. McCormack, 395 U.S. 486, 496-7, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969) (citations omitted).
 
 
 10
 The district's and Jones' disavowal of intent to resume prayers in band class is not sufficient to moot the case. United States v. W.T. Grant Co., 345 U.S. 629, 632-33, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953):
 
 
 11
 [V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot. A controversy may remain to be settled in such circumstances, e.g., a dispute over the legality of the challenged practices. The defendant is free to return to his old ways. This, together with a public interest in having the legality of the practices settled, militates against a mootness conclusion.
 
 
 12
 * * *
 
 
 13
 * * *
 
 
 14
 The case may nevertheless be moot if the defendant can demonstrate that "there is no reasonable expectation that the wrong will be repeated." The burden is a heavy one.
 
 
 15
 (Citations omitted). See also Allen v. Likins, 517 F.2d 532, 535 (8th Cir.1975) (citing W.T. Grant ). The Grant rule applies when "resumption of the challenged conduct ... depend[s] solely on the defendants' capricious actions by which they are 'free to return to [their] old ways.' " Likins, id.
 
 
 16
 The district has not shown that it does not and will not permit prayer at school functions. Jones or another teacher could conduct religious activities and we have no indication that the district would disallow them. Because the district has not carried its heavy burden of showing that "there is no reasonable expectation" that it will permit teachers to conduct prayer in school, the case is not moot.
 
 
 17
 The district claims also that Jennifer's graduation mooted the case. We agree that because she was graduated, Jennifer's claim against the district is moot. See Doremus v. Bd. of Educ., 342 U.S. 429, 72 S.Ct. 394, 96 L.Ed. 475 (1952); Jones v. Snead, 431 F.2d 1115 (8th Cir.1970). But that does not end our analysis. As long as one of the parties retains "cognizable interest in the action" the case is not moot. See McCormack, 395 U.S. at 496-97, 89 S.Ct. at 1950-51.
 
 
 18
 Parents have a cognizable interest in their children's religious education. In Abington School Dist. v. Schempp, 374 U.S. 203, 224 n. 9, 83 S.Ct. 1560, 1572 n. 9, 10 L.Ed.2d 844 (1963), the Court held that parents have standing to challenge school-sponsored religious activities that affect their children. The basis for parents' standing was explained in Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 487 n. 22, 102 S.Ct. 752, 766 n. 22, 70 L.Ed.2d 700 (1982):
 
 
 19
 The plaintiffs in Schempp had standing, not because their complaint rested on the Establishment Clause ... but because impressionable schoolchildren were subjected to unwelcome religious exercises or were forced to assume special burdens to avoid them.
 
 
 20
 Implicit in the Court's explanation is the parental interest to have one's children educated in public schools that do not impose or permit religious practices. Cf. Bell v. Little Axe Independent School Dist. No. 70, 766 F.2d 1391, 1398 (10th Cir.1985): "parents can[ ], on their own behalf, assert that the state is unconstitutionally acting to establish a religious preference affecting their children." (Emphasis added). By suing as a parent, Steele asserted this interest.
 
 
 21
 When Jones led Jennifer's band class in prayer, he injured Steele's parental interest in having her children educated in a public school free of religious activities. That interest will continue so long as she has children in the local schools. Because Joanna and Julianna attend schools in the district, Steele's assertion of parental interest has not been mooted by Jennifer's graduation. Steele's claim as a parent against the school district for permitting prayer in school remains in controversy. The case is not moot.
 
 
 22
 II. Liability of the School District for Jones' Acts
 
 
 23
 The court enjoined "any future school sponsored prayer at any class or function at which attendance by students is compulsory." The district argues that the injunction is improper because the Board had no policy allowing prayer at school functions and there was no proof that it ever sponsored religious activities.
 
 
 24
 The Supreme Court has made clear that municipal liability under section 1983 is conditioned upon a finding that "action pursuant to official ... policy of some nature caused the constitutional tort." Monell v. New York City Dept. of Social Services, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); Pembaur v. Cincinnati, 475 U.S. 469, 483-84, 106 S.Ct. 1292, 1299-1300, 89 L.Ed.2d 452 (1986): "municipal liability under Sec. 1983 attaches where--and only where--a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Because informal practices of government officials can be as injurious as established policies, the custom or policy need not have "received formal approval through ... official decisionmaking channels" to expose it to liability. Monell, 436 U.S. at 691, 98 S.Ct. at 2036.
 
 
 25
 Based on the Board's failure to act and Mitchell's tacit approval of Jones' conduct, the court found that the district had a custom or policy allowing prayer in school. We have reviewed the record and conclude that the court's finding is not clearly erroneous.
 
 
 26
 Members of the Board knew of Jones' prayers in September 1985, when they received Steele's letter. Yet, it took no official steps to address her concerns. Board members testified that they did not act because they did not know whether Jones' conduct was legal. Individual members expressed their support for Jones and his prayers. One even urged Steele to drop the issue and accept Jones' involvement in her daughter's religious education. Mitchell, who assumed responsibility for handling this matter for the Board, told Jones that the Board would support his decision to continue the prayers and take the consequences of Steele's suit.
 
 
 27
 These communications, coupled with the Board's refusal to act, support the court's conclusion that when faced with alternative ways of addressing Steele's concerns, the School Board chose to permit Jones' prayers to continue. The court's finding that this constituted a custom or policy is not clearly erroneous.
 
 
 28
 III. Admission of Evidence of Other Religious Activities
 
 
 29
 The district complains that the court improperly considered evidence showing a religious display in Julianna's elementary school. It admitted a photograph of the display as relevant to whether there was "no reasonable expectation" that the district would allow religious activities in the future. The district claims that the photograph is impermissibly prejudicial because it did not know of the display.
 
 
 30
 Evidentiary rulings are within the court's discretion. Smith v. Firestone Tire & Rubber Co., 755 F.2d 129, 133 (8th Cir.1985). In deciding whether to admit evidence, the court weighs its probative value against its prejudicial effect. Fed.Rule Evid. 403; Wade v. Haynes, 663 F.2d 778, 783 (8th Cir.1981), aff'd, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). Rule 403 does not prohibit admission of all prejudicial evidence. Rather, "[t]he rule protects against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an improper basis." Wade, id. (citation omitted).
 
 
 31
 The photograph does not tend to suggest that the court's ruling was on an improper basis. It indicated that teachers and principals conduct religious activities elsewhere in the district. The probative value of the photograph outweighs any prejudice. The court did not abuse its discretion in admitting it.
 
 IV. Attorney Fees
 
 32
 We grant the appellees' motion, filed March 11, 1988, to supplement the record.
 
 
 33
 Steele's counsel submitted a fee petition requesting payment for 194.8 hours at $100 an hour. The court reduced the hourly rate to $75 and disallowed some parts of the claim. The award of fees and costs totaled $15,103.97.
 
 
 34
 To determine attorney fees under section 1988, the court "multipl[ies] 'the product of reasonable hours times a reasonable rate.' " Cunningham v. City of Overland, 804 F.2d 1066, 1071 (8th Cir.1986) (quoting Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).
 
 
 35
 On April 20, 21 and 28-30, 1987, Steele's attorney spent 3.7 hours obtaining an extension of time. On October 12, 20 and 23, 1987, he spent 23 hours seeking a continuance. It is not reasonable for the school district to pay for these delays. Steele should bear the cost of her attorney's failure to meet court deadlines. Accordingly, we reduce the award by $877.50 (11.7 hours times $75 per hour); the fees and costs awarded total $14,226.47.
 
 
 36
 The judgment of the district court is AFFIRMED as modified.
 
 
 
 *
 The Honorable Eugene A. Wright, Senior Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation
 
 
 [1]
 The Honorable H. Franklin Waters, United States District Judge for the Western District of Arkansas